## BUCKLEY, DEMENT & CO. v. BOWLES, Price Administrator.

### No. 117.

United States Emergency Court of Appeals.
Heard at Chicago May 12, 1944.
Decided July 13, 1944.

Harry M. Brostoff, of Chicago, Ill. (J. Norman Goddess, of Chicago, Ill., on the brief), for complainant.

Jacob D. Hyman, of Washington, D. C. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and Ernest R. Mortenson, Louis L. Rochmes, and Josephine H. Klein, Attys., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LAWS, Judges.

MAGRUDER, Judge.

The complaint in the present case is directed against the failure of the Price Administrator, in granting a petition for adjustment under a price regulation, to make retroactive the allowed increase in prices.

Buckley, Dement & Company, the complainant, is engaged in furnishing direct mail advertising service and in producing general printing and off-set lithography. From 1939 on into 1943 complainant had an arrangement with the Ryan Art Company whereby complainant produced personalized stationery in fulfillment of orders for the same received by Ryan from its retail outlets. Complainant was originally paid on the basis of 30% of the retail prices listed in a catalogue furnished by Ryan to its various retailers. The contract price was predicated on the expectation that Ryan would attain a large volume of sales; but such expectation was not realized and complainant lost money steadily under its contract. Subsequently it was agreed that complainant should receive 35% of the retail catalogue price, but the arrangement still continued unsatisfactory from complainant's point of view. Beginning in the fall of 1941 complainant and Ryan had extended negotiations, the details of which need not concern us now. The result was a new pricing agreement made in March, 1942. Ryan was to issue a new catalogue quoting higher retail prices and complainant was to receive 35% of such higher retail prices. In addition, Ryan agreed to pay complainant any further sums necessary to meet its actual costs of production. It was agreed that these higher prices would go into effect on deliveries from complainant to Ryan on and after April 1, 1942.

On May 11, 1942, complainant's and Ryan's prices became subject to the General Maximum Price Regulation, which had been issued on April 28, 1942. 7 F.R. 3153. This regulation fixed as the maximum price the highest price which the seller had charged for the same commodity delivered by him in March, 1942. Since complainant, for deliveries to Ryan in March, 1942, was still charging 35% of the old catalogue prices, these became the established ceilings. It was complainant's misfortune that its price increases which went into effect for deliveries on and after April 1 just missed coming within the deadline set by the regulation. Cf. Northwood Apartments, Inc. v. Brown, Em.App., 1943, 137 F.2d 809, 813–14. And it is immaterial that complainant's price increases would have been made earlier had not Ryan's issuance of the new catalogue been delayed by the pendency of trade-mark litigation brought against Ryan by competitors.

On July 30, 1942, Ryan filed a "Petition for Amendment of General Maximum Price Regulation," requesting the Administrator to authorize increases in its prices to retailers and in the prices charged by retailers for the stationery in question.

The General Maximum Price Regulation as applied to the commodity here in question was supplanted by Maximum Price Regulation No. 225—Printing and Printed Paper Commodities—issued September 24, 1942, effective September 29, 1942. 7 F.R. 7593. This new regulation continued in effect the March, 1942, price ceilings.

Meanwhile, on April 1, 1942, complainant had begun billing Ryan at 35% of the new catalogue prices, plus the amount of its actual cash losses. It continued to do so throughout 1942 despite the fact that the General Maximum Price Regulation and later Maximum Price Regulation No. 225 prohibited complainant from charging more than its highest March, 1942, prices, namely, 35% of the old catalogue prices. Complainant actually collected 35% of the new catalogue prices. The charges billed as "make-up for cash loss" have not been paid but were in abeyance pending the disposi-

tion of the proceedings before the Price Administrator for revision of prices.

On November 11, 1942, complainant filed an "Intervening Petition in the Nature of a Supplement to the Petition for Amendment of General Price Regulation Heretofore Filed by Ryan Art Company." The Administrator has treated this document as an application for adjustment of prices under § 1347.469 of Maximum Price Regulation No. 225. On December 30, 1942, the Administrator, having been informed that complainant was about to discontinue the production of the stationery in question, denied the application for adjustment on the ground that it had become moot. On February 27, 1943, complainant filed a protest against such denial. Subsequently, however, this protest was withdrawn and the Administrator agreed to reconsider the application for adjustment in view of a representation by complainant and Ryan that they were contemplating a renewal of their relationship.

On September 11, 1943, the Administrator entered an order granting to complainant the increased prices requested for stationery to be sold and delivered to Ryan, but he declined to make the order retroactive, as complainant had asked. The order recited: "The issuance of this Order shall not in any way affect or relieve the liability of Buckley, Dement & Company for any violation of any regulation or order issued by the Office of Price Administration."

Complainant duly filed a protest against that part of the order which denied retroactive relief. The protest was denied by order entered December 28, 1943. Complainant then filed its complaint in this court. The relief requested from us is an order directing the Price Administrator to authorize and permit complainant to charge the increased prices effective as of November 11, 1942, the date of filing its application for adjustment.

Section 1347.469 of Maximum Price Regulation No. 225, as amended (8 F.R. 4184), under which an adjustment of prices was granted to complainant by the order of September 11, 1943, provides for adjustment when a seller of a commodity is unable to supply the same at the established maximum price, and the loss of such seller's supply will force his customers to resort to higher priced sources of supply, with no adequate substitute available at a price equal to or lower than the adjusted maximum price requested. The section contains no express provision authorizing retroactive relief. Assuming that the Administrator might properly grant retroactive relief in exceptional circumstances, we cannot say that the Administrator acted arbitrarily or capriciously in declining to give such retroactive relief under the facts here shown. See the discussion by the Administrator in Dur-O-Lite Pencil Co., 1943, Pike & Fischer O.P.A. Serv., 600:246, as to the unsettling effect upon the whole price control program which might be anticipated from a widespread practice of making retroactive adjustments of maximum prices. Maximum Price Regulation No. 225, as originally issued, contained a provision under which it was possible for a buyer and seller, under certain careful safeguards, to enter into an agreement for a subsequent adjustment of prices to conform to any revision of maximum prices made by the Administrator after the commodity had been delivered. This provision was as follows:

"§ 1347.461 Conditional agreements. No seller of any commodity or service for which maximum prices are established by this Maximum Price Regulation No. 225 shall enter into an agreement permitting the adjustment of the prices to prices which may be higher than the maximum prices provided by this regulation, in the event that this regulation is amended or is determined by a court to be invalid or upon any other contingency: Provided, That if a petition for amendment or for adjustment or for exception under § 1347.469 has been duly filed, and such petition requires extensive consideration, and the Administrator determines that an exception would be in the public interest pending such consideration, the Administrator may grant an exception from the provisions of this section permitting the making of contracts adjustable upon the granting of the petition for amendment (or for adjustment or exception, as the case may be). Request for such an exception may be included in the aforesaid petition for amendment (or for adjustment or for exception under § 1347.-469)."

Complainant did not comply in any particular with the requirements of this section. Instead it continued to charge and collect prices in excess of the established ceilings. It is at least doubtful whether a retroactive order would have had the effect

of wiping out the legal consequences of already accrued violations. Certainly, the Administrator was not obliged as a matter of law to make the adjustment retroactive.

The complaint is dismissed.