**CAPITOL FOUNDRY CO. v. BOWLES,
Price Adm'r.**

**No. 120.**

United States Emergency Court of Appeals.
Heard at Los Angeles Sept. 5, 1944.

Decided Sept. 28, 1944.

Rehearing Denied Jan. 15, 1945.

Henderson Stockton, of Phoenix, Ariz. (S. N. Karam, of Phoenix, Ariz., on the brief), for complainant.

Frank H. Sloss, Regional Price Executive, of San Francisco, Cal. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, Jacob D. Hyman, Chief, Court Review Price Branch, Ernest R. Mortenson, Atty., and Josephine H. Klein, Atty., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LAWS, Judges.

MARIS, Chief Judge.

The complainant is a producer of gray iron castings in Phoenix, Arizona. The Arizona Iron Works is or recently was in the same business in Phoenix.[1] Its nearest competitors are hundreds of miles away in Los Angeles and El Paso. Maximum Price Regulation No. 244 (gray iron castings)[2] froze complainant's prices at the highest price at which it had sold or offered for sale the same or substantially the same castings between August 1, 1941 and February 1, 1942. Complainant's business has been very successful under the personal supervision and management of its two officers who are its sole stockholders. But in 1943 it found its labor and other costs rising and its profits decreasing and it made application to the Price Administrator for an adjustment of its maximum prices pursuant to the adjustment provisions contained in Section 1421.157(a) of the Regulation, as amended.[3] The Administrator denied the complainant's application and subsequent protest, whereupon the complainant brought the case here.

The provisions of Section 1421.157(a) of the Regulation, as amended, under which the application was filed, are as follows:

"(a) Any seller of gray iron castings may file an application for adjustment of his maximum prices for any or all such castings: Provided, That he is prepared to show:

"(1) That his maximum prices for such castings are below his costs of producing them, or are inadequate to maintain continued production of such castings, and

"(2) That such castings are necessary to the war effort, and either

"(3) That he has entered into or proposes to enter into Government contracts or subcontracts under such contracts for the sale of such castings, or

"(4) That unless adjustment is granted applicant will cease or will not undertake production of such castings, and as a result the purchaser will be materially handicapped in its operations for one or more of the following reasons:

"(i) Applicant possesses special knowledge and experience in the production of such castings,

---

[1] Counsel for complainant stated at bar that the Arizona Iron Works has now gone out of the business of producing gray iron castings.

[2] 7 F.R. 8558.

[3] Amendment No. 3, 8 F.R. 3002.

"(ii) No other foundry properly equipped to produce such castings is located within a convenient distance of purchaser,

"(iii) There is a general shortage in the type of facility possessed by applicant for the production of such castings,

"(iv) The purchaser will be unable to procure such castings from another satisfactory source except at prices higher than those requested by applicant.

"Such adjustments may be granted by the administrator or, in an appropriate case, by the regional administrator for the appropriate regional office of the Office of Price Administration, and shall be based upon a consideration of changes in applicant's costs of production, his over-all returns and such other circumstances as may be pertinent to the maintenance of an adequate supply of gray iron castings needed for the war effort. * * * "

■ It will be observed that the adjustments here contemplated are only those individual adjustments which are required in order to keep up in a particular plant the production of castings necessary for the war effort. This particular section does not concern itself with modifications in the maximum prices which may be necessary in order to keep those prices generally fair and equitable. The complainant's failure to observe this distinction has led it to advance in support of its requested adjustment considerations which would only have been available to it if it had protested the continued validity of the Regulation itself on the ground that increasing costs and decreasing profits had rendered the maximum prices fixed by the Regulation no longer generally fair and equitable.[4] Since this is an adjustment proceeding the complainant is not in a position to question the validity of the regulation under the terms of which the adjustment is sought, but is restricted to the question whether the Administrator was arbitrary or capricious in holding that the complainant had failed to bring itself within the terms of Section 1421.157(a) of the Regulation. Armour and Company of Delaware v. Brown, Em.App.1943, 137 F.2d 233; Goodman v. Bowles, Em.App.1943, 138 F.2d 917. We accordingly turn to the consideration of that question.

The primary standards set by subparagraph (1) of Section 1421.157(a) are that the maximum prices for the applicant's castings are either below the cost of producing them or inadequate to maintain continued production of them. Complainant does not assert that its prices are below its cost of production. Consequently the question is whether the Administrator erred in holding that the complainant had failed to show that its maximum prices are inadequate to maintain continued production of castings at its plant. The Administrator asserts, we think rightly, that an objective test is here involved. Certainly a subjective test would be wholly incompatible with price control since it would make price adjustment dependent upon the feelings of an applicant rather than upon the facts of his situation.

■ The Administrator has adopted a uniform standard by which to determine whether the maximum prices of an applicant for adjustment are adequate to maintain continued production of castings by it. It is based upon the proposition, which we cannot hold to be unreasonable, that a producer will ordinarily continue production of a commodity if he is realizing the same rate of profit that the industry generally realized during a representative prewar period. We have held that the adoption of standards by the Administrator for the sake of uniformity in making necessary adjustments in maximum prices is not only permissible but highly desirable. Gillespie-Rogers-Pyatt Co., Inc. v. Bowles, Em.App. 1944, 144 F.2d 361.

The Administrator ascertained that the average earnings of gray iron foundries during the period 1936 to 1939, inclusive, were approximately 4% of sales. He concluded, therefore, that if a producer of gray iron castings was realizing current profits of 4% or more of sales there was reasonable ground to believe that he would continue production. Accordingly, the Administrator tells us, he has adopted the uniform rule of action on applications for adjustment under Maximum Price Regulation No. 244 that no adjustment would be granted having the effect of returning profits in excess of 4% of sales.

The record shows, and the complainant admits, that although its rate of earnings has greatly dropped it is still in

---

[4] The Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix § 901 et seq., sets no time limit on the filing of a protest based on new grounds such as these. R. E. Schanzer v. Bowles, Em.App.1944, 141 F.2d 262.

excess of 4% of sales. It will thus be seen that the Administrator was right in holding that the complainant had failed to meet the standard which the Administrator had prescribed as a basis for adjustment. The complainant, however, urges that the Administrator's action in thus strictly applying his standard was arbitrary and capricious for a number of reasons. We think that these contentions are based upon the misconception of the scope and purpose of the adjustment provision to which we have already adverted and, while possibly relevant in support of a protest against the continuing validity of the Regulation itself, they are not available to the complainant in a proceeding in which it must accept the Regulation, including the limitations of the adjustment provisions, as valid and binding upon it.

Thus the complainant argues that the Administrator's order denying its application is erroneous as compelling changes in its business practices, cost practices and methods in violation of Section 2(h) of the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 902(h). The practices to which it points are those of adjusting its prices to increases in costs under escalator clauses contained in the contracts with its customers. In pressing this point the complainant asks us to overrule our decision in Philadelphia Coke Co. v. Bowles, Em.App.1943, 139 F.2d 349, in which similar practices were involved. But it is clear that the increases provided by the complainant's escalator clauses are prohibited by Section 1421.151 (a) of the Regulation itself and not by the order here under review. That section provides: "On and after October 26, 1942, regardless of any contract, * * * no person shall sell or deliver gray iron castings * * * at prices higher than the maximum prices * * *." It will thus be seen that the question is not before us in this case.

It is urged that the Administrator's action was discriminatory in that while refusing complainant's application for adjustment he granted a similar application made by its competitor, the Arizona Iron Works, thereby allowing the latter a higher maximum price than that fixed for the complainant. This argument loses sight of the fact that the sole purpose of the adjustment provision was to assure production of castings needed for the war effort. It appeared that the prices of the Arizona Iron Works did not afford it a return of 4% on sales and on some castings did not even cover its cost of production. Thus the application to the Arizona Iron Works of the same standard which had been applied to the complainant called for an adjustment in the case of the former but not in the case of the latter. Moreover the Act does not require uniform maximum prices for all competing members of an industry. Indeed the freeze date method of establishing maximum prices, which we have upheld,[5] and which is incorporated in Maximum Price Regulation No. 244 under which the complainant and its competitors are operating, has the effect of retaining the price variations which previously existed in the industry.

Complainant also argues that it has been discriminated against because its profits have been reduced from 16.45% on sales for the period 1936 to 1939, inclusive, to little more than 4%, whereas the industry generally has enjoyed an increase in earnings over the prewar years. This, however, has been brought about by the operation of the Regulation, not by the order here in question. If the Regulation is no longer generally fair and equitable the complainant may secure relief by filing a protest against it upon that ground. As has already been pointed out, we are here concerned only with the question whether an adjustment of complainant's maximum prices was necessary to keep its foundry in production of castings needed for the war effort. Upon the application of an objective standard which we deem reasonable the Administrator concluded that a price adjustment was not needed for that purpose. The record does not suggest that the standard has not been uniformly applied throughout the industry in considering applications for adjustments under Section 1421.157(a) of the Regulation.

The Administrator's order denying complainant's application for adjustment directed it to refund to its customers any payments received by it in excess of the maximum prices permitted by the Regulation and to make a report to the Office of Price Administration with respect thereto. The complainant contends that the Administrator was without authority to make such an order. We cannot agree. Section 1421.156 of the Regulation authorized the

---

[5] United States Gypsum Co. v. Brown, Em.App.1943, 137 F.2d 803.

complainant while its application for adjustment was pending to "make sales, deliveries or offers of sale at prices adjustable in accordance with the disposition of such * * * application" and directed that the applicant "shall refund to the purchaser any moneys or other consideration paid which are in excess of the maximum price." Section 202(a) of the Act, 50 U.S. C.A.Appendix, § 922(a), authorizes the Administrator "to obtain such information as he deems necessary or proper to assist him in * * * the administration and enforcement of this Act and * * * orders * * * thereunder." It will thus be seen that the order for the refunds was authorized by the Regulation, the validity of which is not subject to question in this proceeding, and that the order for the report was authorized by the Act.

The complainant's other objections are primarily directed to the validity of the Regulation and the constitutionality of the Act and consequently, for the reasons already stated, are not properly raised in this proceeding. They, therefore, need not be further discussed.

We conclude that the order under review was neither arbitrary nor capricious.

A judgment will be entered dismissing the complaint.

## On Petition for Rehearing.

MARIS, Chief Judge.

The complainant filed a petition for rehearing in which it again urged that the order of the Administrator denying its application for adjustment was arbitrary and capricious. While the petition raised no new questions we requested and have received further argument by way of briefs with respect to two of the questions originally raised. It will, therefore, be appropriate somewhat to elaborate these two points.

The complainant strongly asserts that it was arbitrary for the Administrator to refuse its application for adjustment on the sole ground that its rate of profit on sales had not fallen below that enjoyed by the industry as a whole during the prewar years 1936 to 1939. In his opinion denying the complainant's protest the Administrator placed his action principally upon this ground.

In our prior opinion we stated that it is entirely reasonable for the Administrator to employ objective standards to test the merits of the applications for individual adjustments under Section 1421.157(a) of the Regulation. To this view we adhere. We held that it was not unreasonable in the complainant's case for the Administrator to employ one such standard, the rate of profit on sales earned by the industry generally in the prewar years, as the sole criterion for determining the necessity of granting relief. After further consideration we now think that it may well be unreasonable for the Administrator to employ this or any other single standard as the sole criterion for this determination.

The regulation itself provides that such adjustments shall be based "upon a consideration of changes in applicant's costs of production, his over-all returns and such other circumstances as may be pertinent to the maintenance of an adequate supply of gray iron castings needed for the war effort". It thus appears that a number of objective factors are specifically indicated as necessary to be considered.

The transcript of the protest proceedings discloses that before the administrator denied the complainant's application for adjustment he did take into consideration all the factors indicated in the regulation and not merely the rate of profit on sales. Thus it appears from his opinion denying the application that he took into consideration the wage increase granted by the National War Labor Board and the other cost increases to which the complainant pointed. He also considered as relevant factors the 70% increase between 1936 and 1943 in the salaries of the officer-stockholders and the 100% increase in dividends during that period. He pointed out that the complainant's profits even after giving effect to the recent wage increase, still amounted to close to 60% on net worth. Finally he noted that the complainant's profits, after giving effect to the wage increase, amounted to nearly 5% on sales.

Likewise, in the opinion denying the complainant's protest the Administrator, while placing strong emphasis upon the amount of profit on sales, also gave weight to the other factors enumerated in the regulation. He expressly stated that the order denying the application "was issued after due and adequate consideration of changes in Protestant's cost of production, its over-all returns and such other circumstances as may be pertinent to the maintenance of production of gray iron castings," and he found

the additional evidence submitted in the protest proceeding "insufficient to warrant the re-opening of the adjustment proceedings".

We adhere to the view that the Administrator's denial of the application was not unreasonable in the light of all of the factors which he took into consideration. Moreover we think it is clear that the factor which the Administrator most stressed, the profit realized on sales by the applicant as compared to the industry as a whole, is a factor of primary significance. The application of the industry profit on sales standard assures the complainant a profit on its sales during the present war period which will at least equal that enjoyed by the industry generally during the prewar years 1936 to 1939.

This brings us to the second question raised by the complainant. It strenuously urges that the Administrator's use of 4% as the historical ratio of profit to sales in the prewar industry is arbitrary and capricious. The complainant has offered no evidence to controvert the 4% figure, however, but asserts that its erroneous character is revealed by the statistical data set out in the statement of considerations accompanying the issuance of Maximum Price Regulation No. 244 under which the adjustment is sought.[1] The presumption of validity which attaches to the Administrator's determinations[2] accordingly supports the figure of 4% unless the supporting data to which the complainant points establishes that it has been erroneously computed. After careful study of that data we are satisfied that it does support the Administrator's determination and that the complainant has failed to establish the invalidity of the 4% figure.

Table III which is set out in the Administrator's statement of considerations[3] states the percentage distribution of sales in 1941 in the gray iron castings industry as among five different groups of firms classified according to size. Table IX[4] states the median of the ratios of profits to sales in each of these groups of firms for the period 1936 to 1939, as well as for the years 1940 and 1941. The Administrator computed an average ratio of profits to sales for the entire industry for the 1936 to 1939 period weighted, in respect to the proportionate amount of the total business of the industry which was done by each group, by the use of the percentages of distribution of sales among the groups as shown by Table III. The ratio of profits to sales arrived at in this manner is 4.0027%.

The complainant contends, however, that it was arbitrary for the Administrator to use as the basis for his computations the median ratio of profits to sales which he found in each group instead of the average of the ratios of all the members of the group. We are not convinced that this objection is well founded. There are many statistical problems which cannot be solved accurately by the mere striking of a mathematical average. Compare the problem discussed in Safeway Stores, Inc. v. Bowles, Em.App.1944, 145 F.2d 836. The use of the median of a group of comparable figures is a recognized statistical procedure for determining central tendency. The complainant has wholly failed to show that its use by the Administrator in solving the problem with which he was here confronted was so inappropriate as to be arbitrary or capricious. We accordingly cannot hold that the figure of 4% does not fairly represent the percentage ratio of profits to sales which the gray iron castings industry in general enjoyed during the prewar period.

The petition for rehearing will be denied.

---

[1] Pike & Fischer OPA Price Service, Metals & Machinery, p. 8001.

[2] Montgomery Ward & Co. v. Bowles, Em.App.1943, 138 F.2d 669; Philadelphia Coke Co. v. Bowles, Em.App.1943, 139 F.

2d 349; Gillespie-Rogers-Pyatt Co. v. Bowles, Em.App.1944, 144 F.2d 361.

[3] Pike & Fischer OPA Price Service, Metals & Machinery, p. 8004.

[4] Pike & Fischer OPA Price Service, Metals & Machinery, p. 8008.