**VALENTINE & SONS et al. v. BOWLES, Price Administrator.**

No. 155.

United States Emergency Court of Appeals.

Heard at San Francisco June 6, 1945.

Decided Sept. 26, 1945.

Emmett R. Burns, of San Francisco, Cal., for complainants.

John Harman, Regional Price Atty., of San Francisco, Cal. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, Jacob D. Hyman, Chief, Court Review Price Branch, and Louis L. Rochmes, Atty., and Josephine H. Klein, Atty., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

MAGRUDER, Judge.

The complaint in the present case is directed against the Price Administrator's refusal, upon a petition under the adjustment provision of a price regulation, to make a retroactive increase in the maximum permissible charges for apple drying services.

Commercial apple drying services were first, on April 28, 1942, brought under price regulation by the General Maximum Price Regulation (7 F. R. 3153), which fixed the permissible prices for such services at their March, 1942, levels. On August 13, 1942, prior to the commencement of the 1942 apple drying season, such services were placed under § 103(b) of MPR 165, as amended (7 F.R. 6428). After the close of the 1942 apple drying season, on April 1, 1943, acting under the adjustment provision of MPR 165, the Regional Administrator for Region VIII on his own initiative issued Order No. G-2 which retroactively adjusted upwards the maximum price set by MPR 165 for all commercial drying services rendered upon apples sold to any agency of the United States government by persons located in California. Substantially all of the 1942 apple crop had been sold to the United States government. Subsequently, on June 28, 1943, in Order No. G-4, also issued under the adjustment provision of MPR 165, the Regional Administrator for Region VIII increased prospectively the permitted service charges for commercial

apple drying done by any person located in Region VIII.

Section 114(d) of MPR 165, as amended (7 F.R. 8943), made provision for individual adjustments of the maximum service charges set by the regulation when certain conditions were shown to exist:

"(1) That there exists or threatens to exist in a particular locality a shortage in the supply of a service which aids directly in the war program or is essential to a standard of living consistent with the prosecution of the war; and

"(2) That such local shortage will be substantially reduced or eliminated by adjusting the maximum prices of such seller and of like sellers for such service; and

"(3) That such adjustment will not create or tend to create a shortage or a need for increase in prices, in another locality, and will effectuate the purposes of the Emergency Price Control Act of 1942, as amended [50 U.S.C.A. Appendix § 901 et seq.].

"Each Regional Administrator is authorized to make adjustments or act upon applications for adjustments under this paragraph (d).

"Applications for adjustment filed under this paragraph (d) shall be filed in accordance with Revised Procedural Regulation No. 1."

Acting under § 114(d), the complainants, six commercial apple dryers from the Watsonville drying area in California, filed, on July 22, 1943, a joint application for adjustment. At the time of application the provisions of Order No. G-2 determined the charges which these complainants could lawfully receive for their drying services during the 1942 season. What complainants sought in this application was, in effect, a further retroactive increase in the maximum charges for apple drying in the 1942 season beyond what had already been given them under Order No. G-2.

The application for adjustment was denied by the Acting Regional Administrator on August 24, 1943. It was pointed out that Order No. G-4, issued June 28, 1943, now controlled the situation prospectively, and a retroactive adjustment upwards of the service charges for the 1942 season above those set by Order No. G-2 was refused. Shortly thereafter, the complainants posted notices announcing that no apples would be accepted for commercial drying in the 1943 season.

On September 10, 1943, the complainants sought review of the Acting Regional Administrator's order denying their application for adjustment. On March 27, 1944, the Acting Price Administrator denied, on review, the application for adjustment.

The complainants filed, on May 25, 1944, a protest directed against Order No. G-2 and the Administrator's order of March 27, 1944. The protest was denied by the Administrator on June 29, 1944. On July 27, 1944, a complaint was filed with this court and, pursuant to an order of the court, the protest proceedings were reopened for the presentation of further evidence. Such additional evidence was filed in the reopened proceeding, and on February 20, 1945, the Administrator issued an order denying the protest upon reconsideration.

The complainants in their protest set forth 26 objections. Upon analysis of the situation as presented to this court, however, the issue properly before us is found to be very narrow.

We have only to determine whether the complainants have shown, under the requirements of the adjustment provision (§ 114(d) of MPR 165, as amended), that it was arbitrary or capricious for the Price Administrator to refuse to grant the application for a further retroactive increase in the permissible service charges for the 1942 apple drying season. The complainants in their protest made a number of objections which went to the validity of the basic price regulation (MPR 165). However, what the complainants sought were individual adjustments under the terms of the regulation, and such adjustments must be sought within the framework of the adjustment provision contained in the regulation. "Since this is an adjustment proceeding the complainant is not in a position to question the validity of the regulation under the terms of which the adjustment is sought, but is restricted to the question whether the Administrator was arbitrary or capricious in holding that the complainant had failed to bring itself within the terms of * * * the Regulation." Capitol Foundry Co. v. Bowles, Em.App. 1945, 146 F.2d 855, 859, at page 857. Complainants made no formal protest against the regulation itself (M.P.R. 165, as amended). Therefore, the regulation must be considered as unchallenged for the purpose of this decision.

Nor does the complainants' protest by its terms bring in issue the question of a prospective increase of the permitted maximum charges for commercial apple drying services which were, at the time of their protest, determined by Order No. G-4, also issued under the adjustment section of MPR 165. In fact, no evidence as to the effect of Order No. G-4 was offered. The complainants cannot seek a prospective adjustment. Moreover, as the complainants claim now to have stopped rendering the commercial service of apple drying in favor of a new method of doing business under which they buy apples from the growers and dry for their own account, they would in any event have no standing to seek a prospective adjustment of prices set by Order No. G-4.

The only evidence offered by the complainants to bring themselves within the terms of § 114(d) was that, shortly after the Acting Regional Administrator for Region VIII had denied their application for adjustment, notices were posted in which the complainants announced that they would accept no apples for commercial drying in the 1943 season. However, no evidence was offered as to what effect the requested retroactive increase for the 1942 season would have upon the future supply of the service, nor as to what the effect of such an adjustment would be in other localities.

In passing upon applications for retroactive adjustment, the Administrator has granted such requests only in very exceptional circumstances, pursuant to standards he has formulated for his administrative guidance. Thus, he has required, before granting a retroactive adjustment, a showing by the applicant that the results of his over-all operations for the period in question left him in such a deteriorated financial situation that, unless relief were given by retroactive adjustment, the complainant could not continue to supply the services and thus take advantage of a prospective increase of maximum prices. The generally unsettling nature of retroactive relief and the administrative burden which would arise if such relief were sought by many applicants make the strict standards set by the Administrator for this type of relief reasonable. Cf. Buckley, Dement & Co. v. Bowles, Em. App.1944, 143 F.2d 877; In re Dur-O-Lite Pencil Co., 1943, 1 Op. & Dec. 196.

None of the complainants has offered any data as to its over-all operations for the 1942 drying season in which it both dried apples for its own account and furnished commercial apple drying services to growers. Nor has any evidence been offered as to what would be the financial position of the dryers under the increased prices provided prospectively by Order No. G-4. It is not necessary to analyze certain economic data offered by the complainants, as the data were neither directed to, nor cast light upon, the only issue properly before this court. The complainants have failed utterly to show that a situation existed under which the Price Administrator was obliged to increase retroactively the permitted maximum service charges for the 1942 apple drying season.

Judgment will be entered dismissing the complaint.