**SCHWARTZ et al. v. CLARK, Director, Division of Liquidation, Department of Commerce.**

**No. 431.**

United States Emergency Court of Appeals.

Submitted Sept. 10, 1947.

Decided Sept. 30, 1947.

Rehearing Denied Oct. 20, 1947.

John F. McCarthy, of Chicago, Ill., for complainants.

Tom C. Clark, Atty. Gen., and Floyd L. Cook, Charles G. Mulligan, Harry H. Schneider, and James A. Durham, Attorneys, Department of Justice, all of Washington, D. C., for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LINDLEY, Judges.

MAGRUDER, Judge.

On June 4, 1945, complainants, as copartners under the name Speedy Auto Wash, commenced operations in the business of cleaning, washing and polishing automobiles at 6000 South Western Avenue, Chicago, Illinois, and thereby became subject to the provisions of Revised Maximum Price Regulation No. 165—Services (10 F.R. 2097). They occupied the business premises under a lease executed by the owner. For some years prior to their tenancy, the premises had been leased to another company which had carried on the service of washing and polishing automobiles. As of May 31, 1945, the owner terminated the lease of this earlier tenant and evicted it. According to the complaint, complainants "are not the successors of the first company"; it is alleged that aside from purchasing $2,000 worth of supplies from it, they did not assume its name, receive its books and records, get its assets or assume its liabilities.

Under § 4 of RMPR 165, maximum prices were frozen at the levels prevailing during March, 1942. Section 10 provided that if a person acquired the business, assets or stock in trade of any business after April 28, 1942, and continued thereafter "to supply the same type of service", the successor's maximum price "shall be the same as those to which your transferor would have been subject if no such transfer had taken place * * *" Section 5(a) provided that if a new seller could not determine his maximum price under § 4, he must file an application with the appropriate OPA district office for approval of a maximum price in line with the level of maximum prices otherwise established by the regulation. Section 5(b) provided that such applicant "may not sell the service for

which a maximum price is requested under this section until that price has been approved by OPA, but the proposed price shall be considered approved 20 days after mailing the application * * *, unless, within that time, OPA notifies you that your proposed price has been disapproved."

It appears that complainants' predecessor had an established maximum price for the car washing service of $1 per car, established under the freeze provisions of § 4. Complainants, when they started business in June, 1945, proceeded to charge $1.25 per car. An enforcement suit was filed against complainants in July, 1945, charging complainants with the sale of car washing services at over-ceiling prices, predicated upon the theory that complainants' maximum price was established under § 10 of the regulation at $1 per car, the maximum price of complainants' predecessor. We gather that this enforcement suit is still pending.

In May, 1946, which was several months after the date of the alleged over-ceiling transactions involved in the enforcement suit, complainants filed an application with the Chicago Office of the OPA for approval of a maximum price of $1.25 under § 5 of the regulation, stating that they were unable to determine their maximum price under § 4, which established the maximum price for the earlier company, because their service was new and different and superior to that rendered by such earlier company. Under date of June 6, 1946, the District Price Executive disposed of the application by a letter to complainants stating that their maximum price was determinable under § 10 of RMPR 165 as being that of their tranferor established under the freeze provisions of § 4 and, therefore, that complainants' application for a determination of maximum prices under § 5 "is cancelled."

On October 10, 1946, complainants filed their protest against the aforesaid letter of June 6, 1946, which they construed to be a protestable order issued under § 2 of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 902, within the meaning of § 203(a) of that Act, 50 U.S.C.A.Appendix, § 923(a). It was not a protest against the validity of § 10 of the regula-

tion which, in conjunction with § 4, fixed complainants' maximum price if, in fact, complainants took over a predecessor's business, and continued "to supply the same type of service." The protest was dismissed by respondent on July 7, 1947; and thereafter, on August 6, 1947, the present complaint was filed in this court.

Respondent has moved to dismiss the complaint for the reason that this court is without jurisdiction to entertain it. It is urged that the aforesaid letter of June 6, 1946, is nothing more than an "unofficial interpretation" of RMPR 165 as applied to the facts in the case and is not an "order" issued under § 2 of the Emergency Price Control Act; hence, that it cannot be the subject of a protest under § 203(a) or review by this court under § 204(a), 50 U.S. C.A.Appendix, § 924(a).

█ If, in fact, complainants did not continue to supply the same type of service as that of their predecessor, but inaugurated a new and different type of service, then the application under § 5 for determination of a maximum price was proper. Complainants' maximum price, in that state of facts, could not be determined pursuant to § 10, in conjunction with § 4. The only way complainants could get a maximum price established would be by application under § 5, and complainants would have been forbidden to sell the service at the price proposed in the application until action was taken thereon by the OPA as provided in § 5(b). The application under § 5 was therefore like a petition for adjustment under a regulation. We have hitherto regarded an order denying a petition for adjustment as an order issued under § 2 of the Act, and therefore subject to protest under § 203(a) and review in this court under § 204(a). Capitol Foundry Co. v. Bowles, Em.App.1945, 146 F.2d 855. See Smith v. Bowles, Em.App. 1944, 142 F.2d 63. It may well have been, therefore, that the letter of June 6, 1946 (stating that complainants' application under § 5 "is cancelled" on the alleged erroneous ground that their maximum price was established under § 10), was in effect an "order" denying an application for individual adjustment, and hence protestable.

Otherwise, an applicant would be completely stymied by the administrative action and could get no judicial review of a denial of a proper application for determination of a maximum price.

However that may be, with the termination of price control the issue as to the validity of the "order" denying complainants' application under § 5, in its prospective aspect, became moot. Despite the general termination of the Emergency Price Control Act on June 30, 1947, § 1(b) of the Act, 50 U.S.C.A.Appendix, § 901(b), preserves our ancillary jurisdiction to determine the past validity of any provision of a regulation upon which pending enforcement proceedings are predicated. Under § 204(e) (2) of the Act, a judgment of this court setting aside a regulation or order under § 2 is given retroactive effect only in criminal or civil enforcement proceedings, and then only to the extent that such proceedings are based upon a violation of the regulation or order so set aside. The enforcement suit now pending against complainants, as already stated, charges over-ceiling sales in violation of § 10 of the regulation. This enforcement suit obviously could not have been predicated upon an alleged violation of the "order" contained in the letter of June 6, 1946, in view of the fact that the enforcement suit had been filed many months previous to that date. Since the present complaint does not seek to challenge the validity of the provision of RMPR 165 which complainants are charged, in the pending enforcement proceeding, with having violated, our jurisdiction to entertain the complaint is not preserved by § 1(b) of the Act. Accordingly, the motion to dismiss the complaint must be granted. The court before which the enforcement proceeding is pending will necessarily have to determine the factual issue whether complainants continued "to supply the same type of service" theretofore rendered by their predecessor, for it is within the province of that court to determine questions relating to the interpretation of the regulation and its application to complainants under the facts to be established. No question is pending as to the validity of the provision of the regulation which complainants are charged with having violated.

A judgment will be entered dismissing the complaint for lack of jurisdiction.