196 F.2d 510
 SAFEWAY STORES, Inc.
v.
ARNALL, Director of Price Stabilization.
 No. 591.
 United States Emergency Court of Appeals
 Heard at Washington April 18, 1952.
 Decided May 5, 1952.
 
 Elisha Hanson, Washington, D. C., with whom Arthur B. Hanson, Garland Clarke and Calvin H. Cobb, Jr., all of Washington, D. C., were on the brief, for the complainant.
 George Arthur Fruit, Attorney, Washington, D. C., with whom Holmes Baldridge, Asst. Atty. Gen., and Edward H. Hickey, Chief, Litigation Section, Department of Justice, and James A. Durham, Asst. Chief Counsel, and Joseph T. Maioriello, Attorney, Office of Price Stabilization, all of Washington, D. C., were on the brief, for the respondent.
 Before MARIS, Chief Judge, and MAGRUDER and LINDLEY, Judges.
 MARIS, Chief Judge.
 
 
 1
 The complainant owns and operates approximately 2,000 retail food stores in 23 states and the District of Columbia in which it sells at retail commodities covered by Ceiling Price Regulation No. 15 — Ceiling Prices of Certain Foods Sold at Retail in Group 3 and Group 4 Stores issued March 28, 1951,[1] under the Defense Production Act of 1950. The Defense Production Act Amendments of 1951, approved July 31, 1951,[2] included the amendment of Section 402(d) of the act by the addition of paragraph (4), known as the Capehart Amendment, which reads as follows:
 
 
 2
 "(4) After the enactment of this paragraph no ceiling price on any material (other than an agricultural commodity) or on any service shall become effective which is below the lower of (A) the price prevailing just before the date of issuance of the regulation or order establishing such ceiling price, or (B) the price prevailing during the period January 25, 1951, to February 24, 1951, inclusive. Nothing in this paragraph shall prohibit the establishment or maintenance of a ceiling price with respect to any material (other than an agricultural commodity) or service which (1) is based upon the highest price between January 1, 1950, and June 24, 1950, inclusive, if such ceiling price reflects adjustments for increases or decreases in costs occurring subsequent to the date on which such highest price was received and prior to July 26, 1951, or (2) is established under a regulation issued prior to the enactment of this paragraph. Upon application and a proper showing of his prices and costs by any person subject to a ceiling price, the President shall adjust such ceiling price in the manner prescribed in clause (1) of the preceding sentence. For the purposes of this paragraph the term `costs' includes material, indirect and direct labor, factory, selling, advertising, office, and all other production, distribution, transportation and administration costs, except such as the President may determine to be unreasonable and excessive." (Emphasis supplied.)[3]
 
 
 3
 Between August 24, 1951 and October 1, 1951 the complainant filed with the respondent a series of 28 applications for adjustments of retail ceiling prices established by CPR 15 or, in the alternative, for amendment of CPR 15. Each application requested the respondent to adjust certain CPR 15 ceiling prices in the manner prescribed by that portion of Section 402(d)(4) which we have italicized or, in the alternative, to amend CPR 15 by establishing ceiling prices thereunder which would enable retailers, including the complainant, to realize on retail sales their customary percentage margins over costs of the materials during the period of May 24, 1950, to June 24, 1950, inclusive. By letter orders dated October 2, 1951 and October 16, 1951 these applications were denied by the respondent. On October 29, 1951 the complainant filed a protest against these orders and against CPR 15 as thus enforced against the complainant without giving it the relief for which it had applied. On November 29, 1951 the respondent issued an order denying the protest in part and dismissing it as to the remaining part. The present complaint was filed in this court on December 21, 1951.
 
 
 4
 The basic question which the complaint raises is whether Section 402(d)(4) of the Defense Production Act, the Capehart Amendment, confers upon the complainant, a seller of materials at retail, the right to obtain an adjustment of its ceiling prices in the manner prescribed in clause (1) of the second sentence of Section 402(d)(4) upon making application and a proper showing. The respondent strongly urges that Section 402(d)(4) applies only to manufacturers and processors of materials and not to wholesalers or retailers thereof. Accordingly, he says, the subsection does not apply to the complainant and its applications for adjustments under the subsection were rightly denied. We do not agree.
 
 
 5
 The language of Section 402(d) (4) is perfectly clear and unambiguous. It applies, according to its express terms, to ceiling prices with respect to "any material (other than an agricultural commodity)". "Materials" are defined by Section 702(b) of the act as including "raw materials, articles, commodities, products, supplies, components, technical information, and processes."[4] This is the broadest kind of definition and plainly includes materials sold at wholesale or retail. Moreover Section 402(d)(4) itself contains an exception, "other than an agricultural commodity", which is expressly carved out of the generality of its application. Its presence excludes the idea of the existence of other unexpressed exceptions. The language "Upon application * * * by any person subject to a ceiling price" is equally clear. There is not the slightest hint in the subsection that "any person" does not include all persons subject to ceiling prices on any material other than an agricultural commodity or on any service. The definition of "costs" contained in the Capehart Amendment does not detract from this conclusion. For while, as the respondent suggests, it does include manufacturing and processing costs, it also includes labor, selling, advertising, office and other distribution, transportation and administration costs applicable to wholesalers and retailers. Moreover, the subsection expressly applies to ceiling prices on services, which necessarily negatives the idea that the costs referred to are limited to manufacturing or processing costs.
 
 
 6
 The respondent strongly urges that the legislative history of the Capehart Amendment shows that it was intended to apply to manufacturers and processors only. We have examined this history and we think that it may fairly be said that a preponderance of the debate was to that effect although there were some statements to the contrary. The primary evidence of the legislative intent is the language of the statute, however. It is that language which states the rule by which those who read it must govern their conduct. If that language is ambiguous or unreasonable or absurd in its effect, they are, by virtue of that very fact, put on notice to look further for its construction. But if the language is clear and unambiguous and its effect is not unreasonable, futile or absurd they are entitled to rely upon it and need not search the legislative records for a limitation which the members may have had in mind but which they did not express in their enactment. In that case there is no need for construction and no ambiguity to be resolved by a resort to legislative history.[5] That is the situation here.
 
 
 7
 The respondent contends that another amendment made to Section 402 at the same time, the so-called Herlong Amendment which added subsection (k),[6] and which applies to retailers and wholesalers only, must be read as excepting those classes of persons out of the general language of Section 402(d)(4) and that unless this is done an unreasonable result will follow. But Section 402(k) applies only to regulations issued after its passage and contains no provision similar to that of Section 402(d)(4) for relief by way of adjustment for increases in costs upon the application of any person subject to a ceiling price. It, therefore, in no way conflicts with or limits the adjustment provision of Section 402(d)(4) upon which the complainant relies. Nor do we think that reading Section 402(d)(4) as it is written will lead to such absurd, futile or unreasonable results as to call for a different construction. It is true that the result may not be what some members of the Congress expected. It may to some degree interfere with the use of uniform dollars-and-cents prices and standard markups for wholesale and retail sellers. But we are not convinced that this is a result which is so plainly at variance with the policy of the legislation as a whole[7] that we must construe the language other than as the Congress wrote it.
 
 
 8
 If the language which the Congress used in Section 402(d)(4) was too broad to express its real intention and there was a legislative purpose, not reduced to writing or incorporated in the Capehart Amendment, to exclude wholesalers and retailers from its operation the way is open to correct the error by amendatory legislation. Indeed such legislation was proposed within a few weeks after the enactment of the Capehart Amendment and was passed by the Senate on October 4, 1951[8] but failed of passage in the House of Representatives. The failure of Congress to enact this amendatory legislation is evidence of its satisfaction with the language of the amendment as originally enacted and as we have here interpreted it and supports our conclusion in this case.
 
 
 9
 Since the individual adjustment provision of Section 402(d)(4) applies to retailers as well as all other persons subject to non-agricultural price ceilings it follows that the complainant's applications for adjustments should have been considered on their merits. Since the cause must be remanded for such consideration the basis for the complainant's protest against CPR 15 fails and we need not further consider it.
 
 
 10
 A judgment will be entered setting aside the letter orders of October 2, 1951 and October 16, 1951 denying the complainant's applications for adjustments and remanding the cause for consideration of the applications on their merits.
 
 
 
 Notes:
 
 
 [1]
 16 F.R. 2735
 
 
 [2]
 65 Stat. 134
 
 
 [3]
 50 U.S.C.A.Appendix, § 2102(d) (4)
 
 
 [4]
 50 U.S.C.A.Appendix, § 2152(b)
 
 
 [5]
 Ex parte Collett, 1949, 337 U.S. 55, 61, 69 S.Ct. 944, 959, 93 L.Ed. 1207; Packard Motor Co. v. National Labor Relations Board, 1947, 330 U.S. 485, 492, 67 S.Ct. 789, 91 L.Ed. 1040; Gemsco, Inc., v. Walling, 1945, 324 U.S. 244, 260, 65 S.Ct. 605, 89 L.Ed. 921; United States v. Shreveport Grain & Elevator Co., 1932, 287 U.S. 77, 83, 53 S.Ct. 42, 77 L.Ed. 175; Wisconsin R. R. Comm. v. Chicago B. & Q. R. R. Co., 1922, 257 U.S. 563, 589, 42 S.Ct. 232, 66 L.Ed. 371
 
 
 [6]
 50 U.S.C.A.Appendix, § 2102(k)
 
 
 [7]
 Compare United States v. American Trucking Ass'ns., 1940, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345
 
 
 [8]
 S. 2170, 82d Cong. 1st Sess., which proposed to amend Section 402(d)(4) inter alia by inserting in that subsection at appropriate places the phrase "ceiling price regulation applicable to the sales of manufacturers or processors of any materials or the charges for industrial services" and by expressly limiting the individual adjustment provision of the subsection to manufacturers, processors and sellers of industrial services