208 F.2d 360
 HALDEMAN CREAMERY, Inc. et al.
v.
KENDALL.
 No. 646.
 United States Emergency Court of Appeals.
 Heard at Washington, D. C., October 17, 1953.
 Decided November 18, 1953.
 
 COPYRIGHT MATERIAL OMITTED Henry H. Whiting, Winchester, Va., and Robert T. Barton, Jr., Richmond, Va., with whom Dabney W. Watts and J. Sloan Kuykendall, Winchester, Va., were on the brief, for complainants.
 Katherine Hardwick Johnson, Atty., Dept. of Justice, Washington, D. C., with whom Warren E. Burger, Asst. Atty. Gen., Edward H. Hickey, Chief, Gen. Litigation Section, Dept. of Justice, and James A. Durham, Acting Gen. Counsel, Israel Convisser, Asst. Gen. Counsel, Washington, D. C., and Bernard A. Goodkind, Atty., Economic Stabilization Agency, New York City, were on the brief, for respondent.
 Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.
 MAGRUDER, Judge.
 
 
 1
 Complainants Haldeman Creamery, Inc., and Newton B. Shingleton are locally established processors and distributors of fluid milk in the Winchester, Virginia, Milk Market Area, as defined by the State Milk Commission. That commission, established under Ch. 357 of the Acts of the General Assembly of Virginia, approved March 29, 1934, regulates the minimum price of fluid milk paid to milk producers by complainants, and also the minimum price to be charged by complainants to consumers.
 
 
 2
 On December 17, 1952, Haldeman Creamery and Shingleton filed with the Director of Price Stabilization their joint protest directed against certain orders of the District Director, Office of Price Stabilization, at Richmond, Va., all of the challenged orders having been issued on June 17, 1952. In the present joint complaint, filed April 24, 1953, by Haldeman Creamery and Shingleton, they claim to be aggrieved by respondent's order of March 26, 1953, denying their joint protest. Since the two complainants present substantially the same factual situation and identical issues of law, we shall hereinafter refer only to the case of Haldeman Creamery.
 
 
 3
 As a processor and distributor of fluid milk, Haldeman Creamery became subject to the General Ceiling Price Regulation issued by the Director of Price Stabilization, effective January 26, 1951. 16 F.R. 808. This was a freeze-type regulation, based upon the highest prices in effect, with respect to the particular seller, during the period December 19, 1950, to January 25, 1951, incl. It is unquestioned that Haldeman Creamery's maximum price to consumers for 4% fluid milk, as thus established, was 20¢ per quart, which was also the minimum price established by order of the State Milk Commission on October 27, 1950.
 
 
 4
 In compliance with § 402(d) (3) of the Defense Production Act of 1950, 64 Stat. 805, 50 U.S.C.A.Appendix, § 2102 (d) (3), relating to minimum standards for agricultural commodities, General Ceiling Price Regulation contained in § 11 a so-called parity adjustment provision, under which processors and distributors were permitted to adjust their ceiling prices for specific agricultural commodities (including milk) in the amounts by which producer prices to them had been increased since the base period. 16 F.R. 813-14; amended, with changes not now material, 16 F.R. 1503, 2548, 4454-55, 5427-29, 17 F.R. 70-72.
 
 
 5
 However, § 11(f) of the regulation (16 F.R. 814) — for obvious administrative reasons — provided that a processor or distributor might not increase his ceiling prices, in accordance with § 11 (b), until he first notified the Director of Price Stabilization, Washington, D. C., by registered mail, giving certain relevant information. And § 11(g) of the regulation contained the following:
 
 
 6
 "Effect of notification of `parity' adjustment. Upon mailing the notification required in paragraph (f) above, you may charge the new ceiling price. If, in the judgment of the Director of Price Stabilization, the increase is deemed unreasonable, excessive or otherwise improper, he may disapprove the price and restore the old ceiling price or establish a new ceiling price and may apply it retroactively." It is undisputed that the highest price for 4% fluid milk paid by Haldeman Creamery to producers during the base period was $5.85 per cwt. This price of $5.85 per cwt. to producers was the minimum price fixed by order of the State Milk Commission on September 27, 1950, applicable to the period October 1, 1950, to March 31, 1951. On January 26, 1951, when the General Ceiling Price Regulation went into effect and froze at 20¢ per quart Haldeman Creamery's maximum price to consumers, Haldeman Creamery had anticipated that the cost of fluid milk which it would have to pay to producers would be reduced on April 1, 1951; for the aforesaid order of the State Milk Commission issued September 27, 1950, also provided that, beginning April 1, 1951, and running through to September 30, 1951, the minimum price for 4% fluid milk to producers would be reduced from $5.85 per cwt. to $5.50.
 
 
 7
 However, by order dated March 28, 1951, effective April 1, 1951, the State Milk Commission in effect revoked its previous order establishing a reduced minimum of $5.50 to producers for the period April 1 to September 30, 1951, and established the minimum price to producers for that period at $5.85 per cwt., which was the previous minimum price to producers in effect during the base period as defined in the General Ceiling Price Regulation.
 
 
 8
 Obviously, under the clear terms of § 11 of the General Ceiling Price Regulation, Haldeman Creamery was not entitled to increase its price to consumers on April 1, 1951, pursuant to the parity adjustment provision. There had on that date been no increase of the cost of fluid milk payable to producers over and above what had been Haldeman Creamery's highest cost for fluid milk paid in the base period, December 19, 1950, to January 25, 1951, incl.
 
 
 9
 But Haldeman Creamery erroneously treated the failure of the anticipated reduction in its cost from $5.85 per cwt. to $5.50 on April 1, 1951, as if its cost on that date had been increased 35¢ per cwt. over its cost prevailing in the base period. Effective April 1, 1951, Haldeman Creamery increased its price to consumers from 20 to 21¢ a quart. Even if it had otherwise been entitled to this increase of its maximum price, Haldeman Creamery was forbidden by the regulation to charge such increased ceiling price until it mailed to the Director of Price Stabilization the notification referred to in § 11(f) and (g), the terms of which are above set forth. Haldeman Creamery did not mail this notification to the Director of Price Stabilization until April 25, 1952.
 
 
 10
 This notification of April 25, 1952, pursuant to delegation of authority from the Director of Price Stabilization, came before the District Director, Office of Price Stabilization, at Richmond, Va., for processing under § 11(g) of the regulation. Under date of June 17, 1952, the District Director issued an order, which is one of the orders herein protested, disapproving the adjusted ceiling price of 21¢ per quart claimed by Haldeman Creamery in its notification of April 25, 1952, and declaring that the company's ceiling price for 4% fluid milk remained the ceiling price lawfully established under the regulation prior to said notice, namely, 20¢ per quart. As above stated, respondent has denied the protest by Haldeman Creamery against this order of the District Director issued June 17, 1952.
 
 
 11
 It appears that there is presently pending in the United States District Court for the Western District of Virginia an enforcement action by the United States in which Haldeman Creamery is charged with violations of the General Ceiling Price Regulation during a period up to and including May 29, 1952; and that no such action is pending, nor is one imminent or contemplated, with respect to any alleged violations occurring subsequent thereto. Notwithstanding the termination on April 30, 1953, of Title IV — Price and Wage Stabilization, as provided in § 717(a) of the Defense Production Act of 1950, as amended, 66 Stat. 306, the saving provision of § 706 (b) of that Act, 64 Stat. 818, preserves the jurisdiction of this court to make an adjudication of the present case, in view of the pendency of this enforcement suit. See 150 East 47th Street Corp. v. Porter, Em.App. 1946, 156 F.2d 541; Standard Kosher Poultry, Inc., v. Clark, Em.App. 1947, 163 F.2d 430.
 
 
 12
 We think it is clear that the aforesaid order of the District Director of June 17, 1952, was in accordance with, indeed was required by, the applicable provisions of the underlying regulation. Haldeman Creamery really does not contend otherwise. Though its protest was directed solely against the order of the District Director administering the parity adjustment provisions of § 11, the asserted grounds of the protest, and of the complaint in this court, in effect constitute an attempted attack upon the validity of the provisions of the regulation itself. But it has been settled by numerous decisions of this court that a protest against an order denying an application for an adjustment does not open up for review the validity of the regulation itself, but only raises the question whether the administrative official or his delegate was arbitrary and capricious in concluding that the applicant had failed to make out a case for an increase of his maximum price within the terms of the applicable adjustment provision contained in the underlying regulation. Armour & Co. of Delaware v. Brown, Em.App. 1943, 137 F.2d 233, 239; Capitol Foundry Co. v. Bowles, Em.App. 1944, 146 F.2d 855, 857; Valentine & Sons v. Bowles, Em.App. 1945, 151 F.2d 343, 344, certiorari denied 1946, 326 U.S. 781, 66 S.Ct. 335, 90 L. Ed. 473.
 
 
 13
 In view of the preceding paragraph, we merely state, without much elaboration, another point which is equally conclusive against complainants on this aspect of the case. On December 17, 1952, when complainants filed their protest, the six-month period of limitation upon the filing of protests, as prescribed in § 407(a) of the Defense Production Act, 64 Stat. 807, would have rendered untimely a protest against provisions of the regulation itself. Section 402(k) of the Defense Production Act, 65 Stat. 136, — the so-called Herlong Amendment — as further amended on June 30, 1952, by § 110 of the Defense Production Act Amendments of 1952, 66 Stat. 299, might have afforded "new grounds" for a protest against an existing regulation maintained in effect after June 30, 1952, contrary to the statutory standard as to "customary percentage margins over costs". But the validity of the regulation on and after June 30, 1952, is not involved in the present case, since no violation of the regulation is charged in the pending enforcement suit to have occurred at any date later than May 29, 1952. Section 402(k) of the Act, the Herlong Amendment in its original form, as enacted on July 31, 1951, 65 Stat. 136, had no application to then existing regulations, such as the General Ceiling Price Regulation here involved. Safeway Stores, Inc., v. Arnall, Em.App. 1952, 196 F.2d 510, 513; Safeway Stores, Inc., v. Freehill, Em.App. 1953, 202 F.2d 753; Kohn v. Freehill, Em. App. 1953, 203 F.2d 958, 959.
 
 
 14
 It is now in order to refer briefly to the protest by Haldeman Creamery against a second order of the District Director, also issued June 17, 1952.
 
 
 15
 By order of the State Milk Commission effective January 1, 1952, Haldeman Creamery's minimum price to be paid to producers in the Winchester Milk Market Area was increased from $5.85 per cwt. to $6.20 per cwt. By the same order Haldeman Creamery's minimum price to consumers was raised from 20¢ to 21¢ per quart. Under the terms of § 11(b) of the regulation, this 35-cent per cwt. increase of cost would have entitled Haldeman Creamery to an increase of one cent per quart in its maximum price to consumers over and above its frozen base-period price of 20¢ per quart. As above stated, Haldeman Creamery had already, on April 1, 1951, unauthorizedly increased its price to 21¢ per quart; and on January 1, 1952, it put into effect a second increase, now to 22¢ per quart, again without mailing the prescribed notification to the Director of Price Stabilization as required in § 11(f) and (g) of the regulation.
 
 
 16
 Finally, under date of June 7, 1952, Haldeman Creamery filed its notification informing the Director of Price Stabilization of the increase in its producer price from $5.85 to $6.20 on January 1, 1952, and claiming a new ceiling price to the consumer of 22¢ per quart for 4% fluid milk. For the reasons already explained, this notification was in error in claiming an existing ceiling price to the consumer on December 31, 1951, of 21¢ per quart, upon the basis of which Haldeman Creamery claimed a one-cent per quart increase, or a new ceiling price of 22¢ per quart, because of the 35-cent per cwt. increase of its costs on January 1, 1952.
 
 
 17
 Because of this error in the notification, the District Director on June 17, 1952, issued his order disapproving the claimed adjusted ceiling price of 22¢ per quart, and determining that the company's ceiling price was the ceiling price lawfully established under the regulation prior to said notification of June 7, 1952, namely, 20¢ per quart. The order concluded: "This disapproval is without prejudice to your right to reapply for parity pass-through at any time, pursuant to the provisions of Section 11(f) of General Ceiling Price Regulation." We are informed that shortly thereafter, by a proper application under § 11(f), Haldeman Creamery obtained an order establishing its ceiling price to consumers at 21¢ per quart.
 
 
 18
 It might perhaps be urged that the District Director, in this second order of June 17, 1952, acted arbitrarily in disapproving altogether Haldeman Creamery's claim for a higher ceiling price because of its undoubted increase of cost from and after January 1, 1952; that from the information furnished to the District Director it was clear that Haldeman Creamery was entitled to a new ceiling price of 21¢ per quart; that in these circumstances it was arbitrary and capricious for the District Director, in disapproving the claimed price of 22¢ per quart, not to establish a new ceiling price of 21¢ per quart, retroactive to June 7, 1952, the date of the required notification. Apparently the District Director was fully authorized to do this, under the provisions of § 11(g) of the regulation quoted previously in this opinion.
 
 
 19
 In this case we need not consider the merit of the contention just suggested, for at the most it would only have entitled Haldeman Creamery to an order, retroactive to June 7, 1952, establishing a new ceiling price of 21¢ per quart. But the case has become moot in this aspect, since in the pending enforcement suit the latest date on which it is charged that Haldeman Creamery violated the regulation by sales to consumers in excess of the ceiling price was May 29, 1952. Up to and including May 29, 1952, there is no doubt that the ceiling price, as established by the applicable provisions of the regulation, was 20¢ a quart.
 
 
 20
 A judgment will be entered dismissing the complaint.